Kenneth B. McCRARY and wife, Sue S.
McCrary, Plaintiffs,

v.

The FEDERAL EMERGENCY
MANAGEMENT AGENCY,
Defendant.

No. 85–100–CIV–7.

United States District Court,
E.D. North Carolina,
Wilmington Division.

July 10, 1986.

Trawick & Pollock, Gary E. Trawick, Burgaw, N.C., J. Calvin Cunningham, Lexington, N.C., for plaintiffs.

Samuel T. Currin, U.S. Atty., H. Robert Showers, Asst. U.S. Atty., Raleigh, N.C., Steven M. Rochlis, Regional Counsel, Federal Emergency Management Agency, Atlanta, Ga., for defendant.

## ORDER

JAMES C. FOX, District Judge.

This matter is presently before the court on the defendant's motion for summary judgment, filed July 2, 1986. In accordance with Magistrate J. Rich Leonard's order of July 1, 1986, plaintiffs responded to defendant's motion orally at a hearing held on July 8, 1986.[1] After a thorough consideration of all issues presented in defendant's motion for summary judgment, the court herein GRANTS said motion.

## FACTS

The plaintiffs are the owners of a dwelling located at Topsail Beach, North Carolina, and were insured against a loss caused by flood under a federally issued Standard Flood Insurance Policy (SFIP) issued by the Federal Emergency Management Agency (FEMA) through its National Flood Insurance Program (NFIP). The dwelling was insured under this policy for $62,000, with a $500 deductible applied per incident.

On September 13, 1984, during the time that Hurricane Dianna struck the North Carolina coastline, and while the plaintiffs' flood insurance policy was in full force and effect, the plaintiffs' dwelling incurred water damage. The plaintiffs notified their insurance agent, G.W. Mountcastle Agency, Inc., located in Lexington, North Carolina, of their damage, which in turn reported the claim to the NFIP on or about September 18, 1984. On September 27, 1984, the NFIP forwarded a letter to the plaintiffs and their insurance agent explaining the policy requirements to follow in order for their claim to be given proper consideration. Among other things, the plaintiffs were specifically advised that they must file a proof of loss with the NFIP within sixty (60) days of the loss. In conjunction with this statement, the plaintiffs were advised that a proof of loss form was available through the adjuster, or

1. Plaintiffs did file, however, a five and one-half page memorandum of authorities on July 7, 1986; plaintiffs' response to defendant's motion, however, largely consisted of oral argument and counsels' proffer of testimony to the court.

could be obtained directly from the NFIP upon request. Plaintiffs were also advised that they could submit a proof of loss in letter form provided all the information detailed in the policy was included in the letter. Prior to the conclusion of the letter, plaintiffs were again advised that a failure to file a proof of loss within sixty days of the loss could result in denial of their claim.

To date, plaintiffs have never filed a proof of loss with the NFIP. Within the sixty-day period, however, it is without question that plaintiffs submitted a three-page damage estimate from West's General Repair, dated October 22, 1984, in the amount of $11,288.37. Plaintiffs submitted this estimate in lieu of a proof of loss form upon the representation by Mountcastle Insurance Agency in Lexington that such was all that was necessary to be filed. Plaintiffs' past dealings with the NFIP also indicated to the plaintiffs that an estimate was sufficient in lieu of a proof of loss, in that the NFIP had accepted estimates from the plaintiffs in approving prior insurance claims by them. Upon receipt of this estimate, specifically by letter dated November 13, 1984, the NFIP wrote the plaintiffs and denied their claim on the grounds that the damage to their property was a result of an on-going condition due to high tides, and not from one occurrence of a general condition of flooding. In this letter, the NFIP stated that plaintiffs had one year from the date of the denial within which to file suit in federal district court. The NFIP also stated in this letter that it waived none of its rights and defenses under the insurance policy.. No statement was made regarding plaintiffs' failure to file a proof of loss.

## ANALYSIS

The defendant moves for summary judgment with respect to plaintiffs' claim on the following bases: plaintiffs' failure to submit a sworn proof of loss as required by the terms of the policy bars an action for recovery under the policy; the Standard Flood Insurance Policy does not cover plaintiffs' loss; and, plaintiffs' failure to notify the FEMA of a material change of risk precludes coverage under the policy. The court will not address defendant's latter two grounds as this court finds defendant's first ground regarding the proof of loss to be dispositive of the summary judgment motion.

As indicated hereinbefore, it is without question that the plaintiffs have failed to file a sworn proof of loss. Article VIII, Section I of the Standard Flood Insurance Policy issued to the plaintiffs provides that in the case of a flood loss to insured property plaintiffs must:

4. Within 60 days after the loss, send us a proof of loss, which is your statement as to the amount you are claiming under the policy, signed and sworn to by you and furnishing us with the following information:

a. The date and time of the loss,

b. A brief explanation of how the loss happened,

c. Your interest in the property damaged (for example, "owner") and the interests, if any, of others in the damaged property,

d. The actual cash value of each damaged item of insured property after depreciation is deducted from the costs of replacement of the property (unless the policy's "REPLACEMENT COST PROVISIONS" apply, in which case the replacement cost without allowance for depreciation should be furnished) and the amount of damages sustained,

e. Names of mortgagees or anyone else having a lien, charge or claim against the insured property,

f. Details as to any other contracts of insurance covering the property, whether valid or not,

g. Details of any changes in ownership, use, occupancy, location or possession of the insured property since the policy was issued,

h. Details as to who occupied any insured building at the time of the loss and for what purpose, and

i. The amount you claim is due under this policy to cover the loss, including statements concerning:

(i) The limits of coverage stated in the policy.

(ii) The cost to repair or replace the damaged property (whatever costs less).

In this same section, the policy also states that an insurance adjuster may furnish the claimant with a proof of loss form and help him or her complete it. The policy qualifies this statement, however, by indicating that such is only a matter of courtesy and the claimant must still send a proof of loss within sixty days after the loss even if the adjuster does not furnish the form or help the claimant complete it. Finally, Article VIII, Section Q delineates the conditions for filing a lawsuit, and states that a claimant may not sue the NFIP unless he or she has "complied with all the requirements of the policy." *Id. See* 44 C.F.R. Part 61, App. A(1) (1983).

It is without question that plaintiffs failed to comply with the requirement of filing a proof of loss form. Furthermore, it is also without question that the estimate tendered to the NFIP, *see* Appendix A, failed to provide the information required by the policy. See 44 C.F.R. Part 61, App. A(1) (1983) quoted *supra*. At best, plaintiffs' estimate sets forth the amount claimed at that time ($11,288.37).[2] Plaintiffs maintain, however, that the defendant's prior course of conduct of accepting estimate figures in lieu of proofs of loss, as well as its "acceptance" of the estimate in determining to deny the claim disputed herein on the basis of coverage rather than failure to file a proof of loss, amounts to a waiver by defendant of the proof of loss requirement and/or acts to estop defendant from insisting upon compliance with the policy. For the reasons discussed hereinbelow, this court does not agree.

First, with respect to plaintiffs' waiver argument, the court refers to 44 C.F.R. § 61.13(d) (1983) which provided that:

The Standard Flood Insurance Policy and required endorsements must be used in the Flood Insurance Program, and no provision of the said documents shall be altered, varied or waived other than through the issuance of an appropriate amendatory endorsement, approved by the Administrator as to form and substance for uniform use.

The Standard Flood Insurance Policy, of which the insureds had a copy, stated in pertinent part:

This Standard Flood Insurance Policy cannot be amended nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator. No action we take under the terms of this policy can constitute a waiver of any of our rights.

*See* 44 C.F.R. Part 61 App. A(1); Article VIII, Section D of the insurance policy. Accordingly, federal law and the terms of the Standard Flood Insurance Policy explicitly preclude oral waiver or waiver by conduct. Therefore, any statements made to the plaintiffs by their insurance agent in Lexington, any prior course of conduct by the NFIP, and any course of conduct by the NFIP with respect to the disputed claim herein, cannot result in a waiver of the proof of loss requirement. The FEMA can waive the proof of loss requirement only by duly executing a written waiver, which it did not do in this case. *See Phelps v. Federal Emergency Management Agency*, 785 F.2d 13, 19 (1st Cir.1986). Therefore, this court holds that the FEMA did not waive the proof of loss requirement.

Second, as to plaintiffs' estoppel argument, the court notes that the status of the general rule that estoppel cannot be asserted against the government is in some flux, and the lower federal courts in particular are in disagreement about the applicability

---

**2.** The court notes that plaintiffs now claim $62,000, the policy limit; it is plaintiffs' contention that because defendant did not pay the claim, plaintiffs' property has since been condemned.

No documents whatsoever were ever filed with regard to any claim for damages exceeding the $11,288.37 figure, however, not to mention a proof of loss form.

of estoppel in cases involving failure to file timely proof of loss. *West Augusta Development Corporation v. Giuffrida,* 717 F.2d 139, 140 n. 3 (4th Cir.1983). It is without question, however, that a government agency is not estopped merely because its actions, if taken by a private party, would have worked an estoppel. *Id.* at 141. In order to estop the defendant from insisting upon compliance with the policy, plaintiffs must at a minimum establish that they meet the traditional elements of estoppel. Only if the plaintiffs so establish these traditional elements can this court even consider whether the United States of America may be estopped. *Heckler v. Community Health Services of Crawford County,* 467 U.S. 51, 61, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984); *United States v. 18.16 acres of land,* 598 F.Supp. 282, 286 (E.D.N.C.1984).

In his recent opinion in *United States v. 18.16 acres of land,* Judge Boyle of this district stated that the Supreme Court has indicated in dicta that if the United States may be estopped at all, the parties seeking estoppel must show that the government has engaged in affirmative misconduct in addition to showing that the traditional elements of estoppel are present. 598 F.Supp. at 288 (citations omitted). Judge Boyle did not find it necessary to decide whether or not to apply an affirmative misconduct standard to resolve the estoppel issue raised in that case, however, in that he found that estopping the United States in the circumstances therein presented would violate the separation of powers doctrine. This court similarly finds it unnecessary to decide whether or not an affirmative misconduct standard should be applied to the situation presented herein, in that the court finds for the following reasons that the plaintiffs have failed to show that the traditional elements of estoppel are present.

A party claiming estoppel against a private party must establish four elements in order to raise and sustain a defense of estoppel: (1) the party to be estopped knew the true facts; (2) the party to be estopped intended for his conduct to be acted upon or acted in such a way that the party

asserting estoppel had a right to believe that it was intended; (3) the party claiming estoppel was ignorant of the true facts; and (4) the misconduct was relied upon to the detriment of the parties seeking estoppel. 598 F.Supp. at 286 (citations omitted). The court now analyzes the facts before it to determine whether the parties seeking estoppel, plaintiffs Mr. and Mrs. McCrary, have established these four elements of a traditional estoppel defense.

First, the evidence presented in this case indicates that the party to be estopped, the United States of America, knew the true facts regarding the necessity for filing a proof of loss. Defendant FEMA and its employees knew that, pursuant to the policy and the Code of Federal Regulations a proof of loss was required to be filed by a claimant should a flood loss occur to insured property. The defendant and its employees also knew what information was required to be included in the proof of loss, and that pursuant to the policy and the regulations, that plaintiffs could not recover money under the policy in a lawsuit unless plaintiffs complied with all the requirements of the policy, specifically, the filing of a proof of loss. Therefore, the Government did indeed have knowledge of the true facts in this case.

Second, plaintiffs have established that the government, through their prior course of conduct with the plaintiffs and their consideration of plaintiffs' estimate in denying plaintiffs' claim on the basis of coverage, intended for its conduct to be acted upon or acted in such a way that plaintiffs had a right to believe such conduct was so intended. This element of intent involves the notion of a misleading communication, either through conduct or silence. 598 F.Supp. at 287. Equitable estoppel is not treated like actionable fraud, however, and therefore there is no requirement of scienter, i.e., an intent to deceive. *Id.* The party to be estopped merely must intend that his conduct be acted upon, or reasonably expect that his conduct be relied upon by the parties seeking estoppel. The evidence reveals that a

misrepresentation occurred through conduct on the part of the defendant. The defendant had accepted estimates in lieu of proof of loss forms in past decisions to pay plaintiffs' claims, and seemingly accepted plaintiffs' estimate in lieu of a proof of loss form in making its decision with respect to the damages allegedly sustained by the plaintiffs as a result of Hurricane Diana. Therefore, although the defendant may not have intended its conduct to be acted upon, the defendant reasonably should have expected that its conduct would be relied upon by the plaintiffs.

Plaintiffs have failed to so establish by a preponderance of the evidence the third requirement, i.e., that the party claiming estoppel was ignorant of the true facts. Both the plaintiffs' insurance policy, of which they had a copy, and the Code of Federal Regulations, of which the plaintiffs are charged with legal notice,[3] clearly state that the filing of a proof of loss within sixty days after the loss is a requirement in case of a loss. Additionally, both state that compliance with all the requirements of the policy is necessary to recover money under the policy. Furthermore, by letter dated September 27, 1984, the NFIP stated to plaintiffs and their insurance agent that a proof of loss was required in order to give plaintiffs' claim proper consideration, and plaintiffs were referred to the appropriate sections of their insurance policy. Finally, plaintiffs were put on notice at the time of a March, 1983 loss that they must file a proof of loss within sixty days of the loss in accordance with the policy provisions, and that a failure to so comply could result in denial of their claim. *See* Defendant's Exhibit F to their Motion for Summary Judgment, filed July 2, 1986. Such clearly indicates that plaintiffs were not ignorant of the true facts in the case at bar, i.e., their obligation under the policy to file a proof of loss in connection with a loss. As indicated hereinbefore, the estimate which was filed by the plaintiffs does not conform to the requirements for a proof of loss as delineated in the policy and the Code of Federal Regulations. The court notes that

> [i]f, at the time when ... [plaintiffs] acted, such party had knowledge of the truth, or had the means by which with reasonable diligence ... [plaintiffs] could acquire the knowledge so that it would be negligence on ... [their] part to remain ignorant by not using those means ... [they] cannot claim to have been misled by relying upon the representation or concealment.

*See Heckler v. Community Health Services,* 467 U.S. at 59–60 n. 10, 104 S.Ct. at 2223 n. 10.

The fourth requirement of a traditional estoppel defense, that the misconduct was relied upon to the detriment of the parties seeking estoppel, is certainly present herein. There is no doubt that plaintiffs will be adversely affected by the government's failure to pay their insurance claim. The plaintiffs, however, bear at least partial responsibility for this result, in that they failed to comply with the clear provisions of the insurance policy, the Code of Federal Regulations, and the defendant's letter of September 27, 1984.

As indicated in *Heckler,* 467 U.S. at 63, 104 S.Ct. at 2225, Justice Holmes wrote: "Men must turn square corners when they deal with the Government." (citations omitted). This observation is consistent with the general rule that those who deal with the Government are expected to know the law and may not rely on the conduct of the Government agents contrary to law. *Id.* As indicated by Justice Rehnquist in his concurring opinion in *Heckler,* the supreme court cases "have left open the possibility of estoppel against the Government only in a rather narrow possible range of circumstances." *Id.* at 68, 104 S.Ct. at 2228. The justification for this reluctance

---

**3.** 44 U.S.C. § 1507 provides that publication of a document in the Federal Register creates a rebuttable presumption that it was filed with the Office of the Federal Register and a copy made available for public inspection, and that the copy is a true copy of the original. Such renders the document valid as against a person who has not had actual knowledge of it.

rests primarily upon considerations of sovereign immunity and constitutional grounds—the potential for interference with the separation of governmental powers between the legislative and executive. There is also a vital concern for public policy. In a complex government with thousands of agencies and departments, and innumerable employees, there is a very real need to protect the Government against binding commitments by improper conduct of its agents, which might promote fraud or collusion. 'Fear of uncontrollable liability and crippling losses to the public treasury have also played a role in sustaining the rule.'

*See Phelps,* 785 F.2d at 17 (citations and footnotes omitted).

Because this court does not find the circumstances presented herein so compelling as to warrant the application of the equitable estoppel doctrine against the Government, defendant's motion for summary judgment is GRANTED.

So ORDERED.

550

FLETCHER M. WEST
OWNER

**WEST'S GENERAL REPAIR**
201 Arbor Drive
Lexington, N. C.
"NO JOB TOO SMALL"

PHONE:
246-6767

10-22-84

| | |
|---|---|
| 585 - 12" Cement Block | 819.00 |
| 166 - 4" Cement Blocks | 137.72 |
| 78 - Cop Block | 135.00 |
| Mixing Sand | 120.00 |
| Motor Mix | 85.00 |
| 2 - 3° X 6° Door Units | 306.00 |
| 8 X 7 Garage Door | 255.00 |
| 8 - 32 X 54 Window Unit | 712.00 |
| Porch Stairs 14 Stringer Salt Treated Lumber | 163.00 |
| 19 - Yd Cement | 1007.00 |
| 3 Rolls Wire | 360.00 |
| 2 - 8 X 8 X 16 Salt Treated | 93.00 |
| 3 Boxing Vents | 11.40 |

#4204.18
tax    189 19
#4393.37

FLETCHER M. WES.
OWNER

PHONE: 246 – 6767

**WEST'S GENERAL REPAIR**
201 Arbor Drive
Lexington, N. C.
"NO JOB TOO SMALL"

10-22-84

Remove 3½ to 4½ feet off Sand out
of basement.
Remove old Block
Tear up Broken Basement Floor
Replace 52' Block Wall
Replace 8 Window units
Pour 52' Footing
Lay 829 Block
Pour 19 yd Cement + Finish
Put Wire in Cement
Install Georgi Door
Build Steps to Back porch
Level up Side porch
Replace 2-8x8 Pillings
Replace 3 vents
Clean up and Remove all Debris

552

FLETCHER M. WEST
OWNER

10-22-84

WEST'S GENERAL REPAIR
201 Arber Drive
Lexington, N. C.
"NO JOB TOO SMALL"

PHONE: 246-6767

Materials          $ 4204.18
        tax          189.19
Labor              6895.00
                   $ 11,288.37

Fletcher M. West

OCT 3 0 1984