Lucy **FRECK, a/k/a Lucy Cameron, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE, District Director, Defendants.**

**Civ. No. 90–2141.**

United States District Court, M.D. Pennsylvania, Scranton Division.

Dec. 3, 1992.

**598**

Lucy Freck, pro se.

Lorna N. Graham, U.S. Attorney's Office, Scranton, PA, Gregory D. Stefan, Shannon L. Hough, U.S. Dept. of Justice, Trial Attys., Tax Div., Washington, DC, for defendant.

## MEMORANDUM

NEALON, District Judge.

Lucy Freck, a/k/a Lucy Cameron, proceeding *pro se*, filed the present complaint alleging that the Internal Revenue Service (IRS) "wrongfully took an out of court award of $32,500.00 from her in 1987,"[1] and that it illegally placed tax liens against her property for alleged deficiencies in tax returns filed by the man she was living with, William J. Cameron, for the years 1978, 1979, and 1980. After receiving pre-trial memoranda from the parties, a bench trial was conducted on August 6, 1992. For reasons which follow, the court will dismiss the plaintiff's complaint.

### I.

### Procedural History

The procedural history of this case began on January 25, 1991, when, by Order of the court, Miss Freck was granted *in forma pauperis* status. After having been granted an extension of time in which to file its answer, the government complied on May 3, 1991. The parties filed their pre-trial memoranda and, after a pre-trial conference, they were directed by letter to address several issues raised therein, including the plaintiff's eligibility for innocent spouse status.[2] The court received several correspondences from the parties in response to its directive, and granted the United States sixty (60) days in which to locate and interrogate William Cameron so that it could make a recommendation to the Internal Revenue Service as to whether or not the plaintiff should be granted equitable relief as an innocent spouse.

On February 10, 1992, the defendants filed a motion to dismiss with supporting memorandum. Trial counsel for the United States then notified the court that it could

---

1. The plaintiff later amended her complaint by letter, substituting the United States as the party-defendant and correcting her own error in alleging a date of 1987 in which the government confiscated the $32,500.00 to 1988. *See* documents 9 and 15 of record.

2. *See infra* p. 602, note 9 and accompanying text.

not locate William Cameron and would forward its recommendation as to the innocent spouse issue to the IRS. They noted that the court would be contacted "as soon as the Internal Revenue Service addresses these recommendations." [3]

The plaintiff responded to the government's motion with a "Motion to Maintain Civil Action No. 90–2141 in District Court and Not Dismiss" which the court construed as a brief in opposition to the motion to dismiss. She supplemented her brief by letter dated April 28, 1992, in which she reiterated her request to have her case "heard". On June 26, 1992, an Order was issued denying the defendants' motion to dismiss and a trial date was set for August 6, 1992. Pretrial memoranda were filed, and on August 6, 1992, the court conducted its bench trial.

## II.

### Background

Lucy and William Cameron began living together in 1972, one year after Lucy's high school graduation. Over the next ten (10) years the couple resided both in New York and New Jersey where common law marriages are not recognized by law. The couple had three children. William was the family's sole financial supporter; he managed the bills, paid the rent and taxes. During the years in question, William was employed first as a "runner" on the New York commodity exchange then, in 1980, he became self-employed as a trader, doing business as "L and B" Trading Corp. He incorporated this entity and owned all the stock. Lucy and William resided with their children in New Jersey while William worked and did all the banking, both business and personal, in New York City. Lucy testified that she played no role in the family's financial picture other than the handling of basic household expenses such as purchasing clothes and groceries on the $50.00 to $100.00 weekly "allowance" given her by William. Her role in the preparation of the couple's federal income tax consisted of signing the tax returns, which she

described as a "rubber stamp" on the 1978 return. She conceded at trial that if she had been presented with the 1978 through 1980 returns for her signature, she probably signed them if instructed to do so by William Cameron. She further testified that she would have signed them without conducting as much as even a cursory review of their contents. The plaintiff testified that the family lived the lifestyle of one on a $13,200.00 income as reported in the couple's 1978 tax return (a return prepared by H & R Block). In 1979, the couple purchased a home at 9 Euclid Avenue, Ridgefield Park, New Jersey, for $57,000.00, of which $50,000.00 was obtained by a mortgage loan. She also stated that in 1979 the family began experiencing hard financial times when William was not as successful in the "market." Some time in 1981 William began defaulting on the mortgage payments and became delinquent on the real estate taxes. On December 8, 1981, Lucy and William filed an IRS form, "Consent to Extend the Time to Assess Tax", which they both signed. Lucy claims that she and William parted amicably in late 1982. (Evidence and testimony at trial revealed that after Lucy and William separated, 173 Martin Avenue was the only address with which William was in any way affiliated. This address was obsolete by December 1983.) The government represented at the time of trial that the whereabouts of William Cameron could not be ascertained despite their exhaustive efforts.

Lucy Freck contended that she began to realize that William Cameron had been experiencing severe financial problems when bill collectors began to call on her at their home. On February 23, 1983, the plaintiff and William Cameron sold the property at 9 Euclid Avenue to her brother and sister-in-law, John and Faith Valentinetti as two-thirds owners, and her brother Thomas Valentinetti, a one-third owner, for the sum of sixty-two thousand five hundred dollars ($62,500). The details of this transfer were not fully developed at trial, but testimony by the plaintiff revealed that, despite the

---

**3.** The court was never notified of trial counsel's recommendation.

transfer, Mrs. Cameron and her three children continued to live in the home, with her relatives. In the plaintiff's "Trial Brief" she explains that at some point, Thomas Valentinetti transferred his one-third interest in the Euclid Avenue property to Lucy Freck.

Evidence at trial established that on December 9, 1983, the IRS sent two notices of deficiency to the plaintiff and Mr. Cameron by certified mail at two different addresses. One notice was mailed to 173 Martin Avenue, Staten Island, New York,[4] and the other was mailed to her residence at 9 Euclid Avenue, Ridgefield Park, New Jersey. The plaintiff admitted that she was residing at the Euclid Avenue address at the time the government claims to have sent the notice to that address; she also maintained that she never received the notice.

Lucy Cameron was a welfare recipient from April of 1983 to January of 1986, at which time she began a secretarial job as a result of training provided her through the Education Opportunity Fund at Bergen Community College. At no time could the plaintiff receive alimony from William Cameron, nor could she collect Social Security benefits under his earnings, due to New York's and New Jersey's failure to recognize common law marriages. At some point thereafter, Lucy began her relationship with her present husband, Stephen Freck, and eventually married him in April of 1987, prior to the initiation of this action.[5]

In June of 1987, the IRS filed a federal lien against the property located at 9 Euclid Avenue for the years 1978 through 1980. This lien represented the results of an audit in which the IRS recalculated William and Lucy Cameron's taxable income and federal tax liabilities for the three years in question.[6] Documents submitted by the plaintiff, and admitted into evidence, reflect that in August of 1987, Lucy (now using the name Freck) and Stephen Freck retained counsel in their efforts to resolve the outstanding lien against the 9 Euclid Avenue property.

It was developed at trial that over the next few years, there occurred some intrafamilial discord among the plaintiff and the various branches of the Valentinetti family which culminated in the filing of a civil action, in which Lucy and Stephen Freck, along with Thomas Valentinetti, were sued by John and Faith Valentinetti. The nature of the suit was not fully described, but it resulted in a settlement agreement on September 19, 1988, among the parties, wherein Lucy and Stephen Freck would receive from the Valentinettis the sum of

4. During the course of discovery, Lucy Freck provided the court with a document she obtained from the IRS that included an envelope for the Martin Avenue notice which was returned to the IRS marked "RETURN TO SENDER, MOVED LEFT NO ADDRESS". The court would also note that this document was addressed as follows: *Mr. and Mrs. William Cameron,* 173 Martin Avenue, Staten Island N.Y. 10314. (emphasis added) Neither the IRS nor the plaintiff could produce a copy of the notice that was allegedly sent via certified mail to the Euclid Avenue address. The record, as well as evidence presented at trial, revealed that the Martin Avenue envelope, marked undeliverable as described above, was made a part of the IRS's

Lucy Freck file. The court finds, in all probability, if the letter sent to the Euclid Avenue address was undeliverable, it too would be part of the record.

5. At trial the parties raised the issue of whether any portion of the monies collected by the IRS belonged to Stephen Freck. The Court notes that Stephen Freck is not a party to this suit and, therefore, is not entitled to relief. Because Mr. Freck is not a party to this action, the court makes no determination as to the validity or invalidity of Mr. Freck's rights regarding this matter.

6. The tax liability assessed for the years 1978 through 1980 are as follows:

(1) 1978: corrected taxable income: $32,510.00
 corrected tax liability: $ 7,431.00

(2) 1979: corrected taxable income: $61,255.00
 corrected tax liability: $20,356.00

(3) 1980: corrected taxable income: $36,158.00
 corrected tax liability: $ 8,274.00

$40,000.00 in exchange for the Frecks conveying their interest in 9 Euclid Avenue to John and Faith Valentinetti. Due to the outstanding lien placed on the property by the IRS in 1987, the attorney handling the suit for the Frecks remitted $32,500.00 of the settlement directly to the IRS. This money, according to both parties, was remitted to the IRS without any directions as to how it was to be applied to the delinquent taxes owed for the years 1978 through 1980.[7]

In response to the garnishment, the plaintiff filed amended returns in 1990 for the years in question, 1978 through 1980. On those returns, Lucy listed her filing status as single. The plaintiff, in those returns, claimed a $32,500 refund for the year 1978. The plaintiff maintains she first learned that her refund claim of $32,500 would be denied during an audit review conducted by the IRS in its Allentown, Pennsylvania, office in August of 1990. The IRS has continued to refuse her refund claim and this action resulted. It is this $32,500 dollars, as well as all other tax deficiencies, interest and penalties assessed for the years 1978 through 1980, that are at issue before the court.

### III.

### DISCUSSION

#### A.

■ Prior to any discussion of the substantive issues, the court must first determine if it has jurisdiction over the parties. Section 1346(a)(1) of Title 28 clearly allows for the plaintiff to initiate an action against the United States "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under internal-revenue laws." Further, 26 U.S.C.

7244 does not allow a plaintiff to pursue a claim, "until a claim for refund or credit has been duly filed with the Secretary". In the case of *Flora v. United States*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623, the Court construed the original jurisdiction of the district courts under 28 U.S.C. § 1346(a)(1) to entertain claims for refunds as conditional upon the payment of the full amount assessed. *Miskovsky v. United States*, 414 F.2d 954, 956 (3rd Cir.1969) (citing *Flora*). The IRS, upon enforcing the lien in 1987, applied the funds to the plaintiff's outstanding liabilities in the following fashion; $19,435.33 to the year 1978, which consisted of tax, interest and penalty. This amount paid the full tax liability for that year. The remaining funds were applied to the 1979 year, but were insufficient to pay that year's debt in full. The 1980 tax year remained unchanged. Revenue Ruling 73–305 reads, in pertinent part, as follows:

> Where additional taxes, penalty and interest are assessed for one or more taxable periods and there are no specific instructions as to the application of the partial payment tendered by the taxpayer, the amount of the payment will be applied by the Service, to tax, penalty and interest, in that order, for the earliest period, then to tax, penalty and interest, in that order, for the next succeeding period, until payment is absorbed....

*Id.* In a later ruling, 79–284, the IRS further clarified the Service's position on this issue of disbursement by noting, "[I]f no designation is made, the payments will be allocated to tax, penalty and interest in a manner best serving the interest of the government." *See United States v. DeBeradinis*, 395 F.Supp. 944, 952 (D.Conn.), *aff'd* 538 F.2d 315 (2d Cir.1976); *Lorenzini v. United States*, No. 88–1934; 88–1935, 1991 WL 203086, 1991 U.S.App. Lexis 23733 (6th Cir. Oct. 4, 1991). Accordingly, this court finds that, as to the three years in question, the plaintiff can only meet the

---

7. The $32,500.00 dollars was applied to the tax years in question in the following manner: the IRS applied $19,435.33 of the $32,500.00 to the 1978 liability, which consisted of tax, interest and penalty. This amount fully paid the plaintiff's liability for that year. The remaining $13,064.67 was applied to the 1979 liability. The following tax liabilities remain outstanding; 1979, $6,663.33 and 1980, $7,827.00.

jurisdictional requirements, as set out in *Flora*, for the tax year 1978.[8]

## B.

■ For the tax year 1978, the parties have produced a photocopy of the return which includes two signatures, one of the plaintiff, Lucy Cameron, the second is that of William Cameron. The plaintiff conceded at trial that the signature on that document was hers and that she recognized the other as that of William Cameron. This testimony demonstrates that plaintiff participated in the filing of the 1978 return. The extent of her participation is an issue which requires a more thorough analysis. The plaintiff argues that she should be relieved of the tax liability for the year 1978, claiming as a defense that she is an innocent spouse, pursuant to 26 U.S.C. 6013(e)[9]. It is not disputed that the plaintiff did not know, nor did she have reason to know, that there was a substantial understatement of income by William Cameron on the 1978 return, but this fact alone is of no moment. The critical issue in deter-

mining whether Lucy Cameron should be considered an innocent spouse and, thus, reap the benefit of that defense, is whether she could be considered a "spouse" as the term is used in section 6013(e)(1). It is this issue that is fatal to Lucy Freck's claim. The question of whether a taxpayer is married for the purposes of the tax laws is to be determined by the laws of the state of the marital domicile of the parties. *Boyer v. Commissioner*, 79 T.C. 143 (1982); *Dunn v. Commissioner*, 70 T.C. 361, 366 (1978), *aff'd* 601 F.2d 599 (3rd Cir.1979). Both parties stipulated at the time of trial that Lucy and William Cameron were never married in a formal ceremony of any type. Although they had held themselves out to the public as husband and wife, in fact believing throughout the course of their relationship that they had entered into a common law marriage, Lucy conceded that because their relationship, as well as domicile, was confined to the states of New York and New Jersey, neither of which recognize common law marriages, she and William Cameron were never married.[10]

---

**8.** As mentioned above, at trial there arose the issue of whether Mrs. Freck was given the opportunity to designate how the funds were to be applied to satisfy her tax liability. This debate was further defined to address the issue of whether the payment received by the IRS was a voluntary or involuntary payment by the taxpayer. At the time of the 1988 remittance, Mrs. Freck was represented by an attorney and, in fact, it was through counsel that she made the payment to the IRS. Based on the foregoing, this court finds the 1988 payment was voluntary, and that Mrs. Freck did not designate how the monies were to be applied. Assuming, *arguendo*, the payment was involuntary, the government has the discretion to determine the distribution of the involuntary payment as it sees fit. *In re Ribs–R–Us*, 828 F.2d 199, 201 (3rd 1987) (citing *Slodov v. United States*, 436 U.S. 238, 252 n. 15, 98 S.Ct. 1778, 1788 n. 15, 56 L.Ed.2d 251 (1978)).

**9.** Title 26 U.S.C. § 6013(e)(1), reads as follows:
(e) Spouse relieved of liability in certain cases.—
(1) In general.—Under regulations prescribed by the secretary. if—
(A) a joint return has been made under this section for a taxable year,
(B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,
(C) the other spouse establishes that in signing such a return he or she did not know, and

had no reason to know, that there was such substantial understatement, and
(D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,
then the other spouse will be relieved of liability of tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributed to such substantial understatement.

**10.** Documents admitted as evidence by the court reveal that Lucy Freck, in a memorandum prepared by her attorney, Robert A. Fee, in 1987, for use in her ongoing battle with the IRS, argued that she was never married to William Cameron. Attached to that document were several responses from various New Jersey counties' departments of vital statistics, or their equivalent, all of which reflected no record of marriage between William Cameron and Lucy Freck. *See* plaintiff's trial Exhibit # 5. Exhibit 5 also includes a detailed discussion, by Mr. Fee, of statutes from both New York and New Jersey, which prohibit common law marriages in those states. Mr. Fee's analysis of those statutes resulted in his concluding that in those states Lucy and William were never married. The IRS has asserted throughout that Lucy and William were never legally married.

Having never been legally married, the court concludes that Lucy Freck cannot be considered an innocent spouse for the purposes of § 6013(e)(1).

### C.

 Having found that Lucy Freck was never married to William Cameron, the court must now address whether or not Lucy can be estopped from claiming that she was not married and, therefore, not be held responsible for the tax delinquency created by William Cameron. "The applicability of equitable estoppel to tax refund cases appears to arise only rarely." *Specialized Systems Inc. v. U.S.*, 792 F.Supp. 577, 578 (M.D.Tenn.1992). Under current Third Circuit case law, in order to prevail under the doctrine of equitable estoppel, a party must show (1) a material representation; (2) reasonable reliance upon that representation; and (3) damage resulting from that representation. *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1319 (3rd Cir.1991); *Pane v. RCA Corp.*, 868 F.2d 631, 638 (3rd Cir.1989). When making representations to the Internal Revenue Service, the taxpayer must provide truthful and accurate information as, "[t]he Commissioner of necessity does and must rely largely on the representations of the taxpayer...." *Specialized Systems, Inc. v. U.S.*, 792 F.Supp. 577, 578 (M.D.Tenn.1992) (quoting *Commissioner v. Liberty Bank and Trust Co.*, 59 F.2d 320, 325 (6th Cir. 1932)). Additionally, the court notes language from an early Sixth Circuit case, which is particularly applicable to the case *sub judice:*

> Taxation furnishes fertile soil for equitable estoppel to grow and thrive. The assessing officials must lean heavily on the information contained in the taxpayers' returns. Since the taxpayer has such a broad discretion in his methods of keeping his accounts, and the bar of the statute of limitations falls so promptly against the Government and as he is afforded so many forums of redress before payment is required he should not be relieved of governmental actions by reasons of his representations or silence.

*Robinson v. Commissioner of Internal Revenue Service*, 100 F.2d 847, 849 (6th Cir.1939). Lucy Freck, by her own admission, filed, along with William Cameron, their 1978 IRS return claiming their status to be that of married, filing jointly. The IRS, taking their representation to be true, as all information contained in returns is assumed to be because they are prepared under penalty of perjury, computed the tax due on the return such that Lucy and William had a smaller tax liability than they would have had filing their returns separately as single taxpayers. *See generally United States v. Wynshaw*, 697 F.2d 85 (2nd Cir.1983) (couple filing jointly was a material representation of fact upon which the IRS relied to its detriment which precluded the taxpayer, on the grounds of equitable estoppel, from raising certain affirmative defenses). Therefore, the couple's representation to the IRS that they were married, resulted in a material representation [11] to the IRS on which it reason-

---

**11.** Whether Lucy Freck made an *intentional* misrepresentation of the facts to the IRS is not the relevant issue in determining if the use of equitable estoppel is proper in this instance. Equitable estoppel is not treated like actionable fraud. *United States v. 18.16 Acres of Land*, 598 F.Supp 282, 287 (E.D.N.C.1984) (quoting D. Dobbs, *Handbook on Remedies*, § 2.3, at 42 (1973)). Thus, there are no requirements of scienter, *i.e.*, an intent to deceive. *Id.* The party to be estopped must merely intend that his conduct be acted upon, or reasonably expect that his conduct be relied upon by the party seeking estoppel. *Id.*

However, "A weighty factor in determining the application of the principle is the availability of the necessary facts to the parties involved".

*Robinson v. Commissioner*, 100 F.2d 847, 849 (6th Cir), *cert. denied*, 308 U.S. 567, 60 S.Ct. 81, 84 L.Ed. 476 (1939). The court also notes that equitable estoppel is a substantive rule founded in equity which lacks a standard definition. *United States v. 18.16 Acres of Land*, 598 F.Supp. 282, 286 (E.D.N.C.1984). This lack of hard and fast definition promotes a flexible application of the estoppel doctrine in varied factual settings. *Id.* (citing *Heckler v. Community Health Services of Crawford County*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). Based on the facts of the instant case, the court finds that Lucy Freck had, albeit mistakenly, represented as fact, to the IRS, information on which it reasonably relied, the veracity of which she was in a better position than the government to ascertain. Additionally, the court finds that Lucy Freck's in-

ably relied. This reliance resulted in a detriment to the government, in that Lucy and William's tax liability was less that it would have been had the pair filed separate tax returns, therefore satisfying the elements of estoppel as set forth by the Third Circuit in *Gridley,* and thus makes the government's use of this equitable doctrine appropriate in this factual setting.

### D.

■ The parties argued, at the time of trial, over one final issue. Lucy Freck claims she was not notified of the tax deficiencies for the years 1978, 1979, and 1980, until sometime in 1987; the government contends that Lucy Freck was adequately advised of the tax deficiencies by means of certified mail on December 9, 1983. Title 26 U.S.C. § 6212, which discusses notice of deficiency generally, states, "[I]n general.—If the secretary determines that their is a deficiency [i]n respect to any tax imposed by subtitles A or B of chapter 41, 42, 43, or 44, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail." Subsection (b)(2), of § 6212 allows the government to notify taxpayers filing joint returns in a single joint notice unless the government is apprised by either party that separate residences have been established. The case law interpreting § 6212 reveals that the IRS is not required to prove that the taxpayer received the notice, but only that it was mailed to the taxpayer's last known address. *McCarty v. United States,* 929 F.2d 1085, 1089 (5th Cir.1991) (quoting *Jones v. United States,* 889 F.2d 1448, 1450 (5th Cir.1980)). Courts have even found that notice of deficiency sent by certified mail to the taxpayer's last known address, never received or returned undelivered, provided adequate notice within the meaning of the Internal Revenue Code and satisfied due process. *See generally Morse v. Internal Revenue Service,* 635 F.2d 701 (8th Cir.1980).

The facts before this court require it to come to no other conclusion than Lucy Freck was provided adequate notice of the tax deficiencies for the tax years 1978, 1979, and 1980. The plaintiff testified at trial that on December 9, 1983, she resided at 9 Euclid Avenue. The IRS produced evidence which proved that the tax delinquency notice had been sent to that address on that date. Additionally, during the discovery process, it was developed that on December 9, 1983, the government also sent a notice, addressed to both William and Lucy at 173 Martin Avenue, Staten Island, New York, which was returned, marked, "RETURN TO SENDER, MOVED LEFT NO ADDRESS." [12] As noted previously, the notice to 9 Euclid Avenue was never returned by the Post Office Department.

### E.

In sum, the court finds jurisdiction in this matter for the year 1978 alone, and that Lucy Freck cannot be considered an innocent spouse as the term is used in Title 28 U.S.C. 1346(a)(1), as she was never legally married to William Cameron. In addition, it is the holding of this court that the IRS may properly invoke the doctrine of equitable estoppel to preclude the plaintiff from claiming that because she was never legally married to William Cameron, she should not now be held accountable for his tax deficiencies. The court also finds that the IRS sufficiently notified the plaintiff of her tax deficiencies for the year 1978. Accordingly, the court finds in favor of the defendants and against the plaintiff.

tentions relative to the 1978 filing are of little consequence, the dispositive factor is the result, which in this case is the IRS's reasonable and foreseeable reliance upon her representations which resulted in a detriment to the govern-

ment, *viz.,* an underpayment of taxes to the government for the years in question.

**12.** *See supra* note 4.