OPINION OF THE COURT
Herbert A. Posner, J.
Common-law marriages in New York State were outlawed by statute in 1933 (L 1933, ch 606, § 1). However, a common-law marriage validly consummated in another State or jurisdiction (for example, Washington, D.C.) can be recognized in New York under the doctrine of full faith and credit (US Const, art IV, § 1) if the other State recognizes the validation of a common-law marriage. Minimum contacts with a common-law marriage jurisdiction, of which there are 14 in the United States, are sufficient to activate the foreign law if the party claiming a common-law marriage can prove three things: (1) a present intent to be married; (2) a holding out as *1010 husband and wife to others in both New York and the other State; and (3) cohabitation.
The party claiming a common-law marriage has the burden of proving these three elements (supra) in accordance with the procedural and substantive law of the jurisdiction which recognizes common-law marriages and in which jurisdiction the party relies.[1] This court believes that the plaintiff in this case has done just that.
The court held three days of hearings (Oct. 1, 16 and Dec. 7, 1990), during which the plaintiff testified and presented six witnesses (four of whom were not related to her). The defendant testified on his own behalf and presented two independent witnesses. The defendant and his two witnesses were not able to refute the testimony and physical evidence[2] offered by the plaintiff to the effect that the parties held themselves out as husband and wife and cohabited together in New York, Alberta (Canada), the Bahamas, and Washington, D.C.
What follows is the court’s findings of fact and conclusions of law.
The parties began living together in 1978 while they were both married to other people. By 1984, they were divorced from their respective spouses and free to legally solemnize their relationship. The plaintiff became pregnant by the defendant in 1984 and as soon as her divorce became final (the defendant’s divorce became final in 1983), they went to the Bronx Marriage License Bureau. When the clerk requested copies of their divorce papers, defendant said that they were locked in his safe-deposit box and he had lost the key. Subsequently, when his divorce papers became available, plaintiff asked him to go again with her to the Marriage License Bureau. He said a marriage license is "only a piece of paper.” He told her "We are living happily together like husband and wife. It’s no big deal not having a piece of paper.” They never went back for a marriage license.
*1011 The plaintiff has satisfied the court by clear and convincing evidence (though not required to do so — see n 1), that she and the defendant held themselves out to numerous people in New York State and elsewhere as husband and wife.
At the hearings, plaintiff contended that Alberta, the Bahamas, and Washington, D.C. all recognized common-law marriages. Subsequent research revealed that of the three jurisdictions, only Washington, D.C. recognizes common-law marriages. The evidence clearly establishes that the parties visited plaintiffs relatives in Washington, D.C. two to three times per year — both before and after 1984 (when they became legally able to marry). During their stay in Washington, D.C., they cohabited together.
While the defendant does not deny a long-standing cohabitation, the production of two offspring,[3] the purchase and sale of numerous pieces of realty in joint name, and traveling extensively with the plaintiff as a couple, he denies a common-law marriage on the contention that the plaintiff has not satisfied all three of the necessary elements. He does not dispute that in late 1984 (when both parties were divorced and thus free to marry), he persuaded the plaintiff to forego a solemnization of their relationship by stating, "A marriage license is only a piece of paper. We are living happily together like husband and wife.” However, he contends that this statement took place in New York State and was not repeated in Washington, D.C. Therefore, the defendant contends that there was no "express mutual agreement to be husband and wife” in Washington, D.C. during their visits in 1984 and thereafter. (See, United States Fid. & Guar. Co. v Britton, 269 F2d 249, 252; Cross v Cross, 146 AD2d 302 [1st Dept].)
The entire defense rests on the legal contention that the defendant’s "present tense” agreement to live with the plaintiff "like husband and wife” took place in New York and not in Washington, D.C. This court does not adhere to a doctrine that flies in the face of reality. If the parties enter into an agreement to live "like husband and wife,” that signifies an intention to be married without the formality of solemniza *1012 tian. If they then cohabit together and hold themselves out to others that they are husband and wife, should their original agreement have to be repeated in express terms? The answer obviously is, no! Their agreement to be husband and wife, as expressed in 1984, continues to be their agreement as long as they continue to cohabit and hold themselves out to others as husband and wife — which they did until the "bloom on the rose” faded in early 1990 (a relationship that lasted for more than 10 years).
Once a relationship satisfies the three requirements for a common-law marriage, the parties are considered to be married until divorced. (Matter of Benjamin, 34 NY2d 27 [1974]; Hines v Hines, 131 NYS2d 316 [1954]; Matter of Karageorges, 12 Misc 2d 23 [1958].)
Defendant’s cross motion for summary judgment is denied. The plaintiff’s action for divorce is to continue. As soon as discovery is completed, the plaintiff" is to file a note of issue.

. Though some jurisdictions require proof of a common-law marriage by clear and convincing evidence (see, Metropolitan Life Ins. Co. v Johnson, 103 Idaho 122, 125-126, 645 P2d 356 [1982]; In re Estate of Kovalchick, 345 Pa Super 229, 234, 498 A2d 374), the plaintiff herein is relying upon the law of Washington, D.C., which does not require proof by clear and convincing evidence. (See, East v East, 536 A2d 1103 [1988].)

. Physical evidence consisted of a December 1985 contract for the purchase of realty by the parties with the plaintiff known as Sylvie B. Ramharack; a May 1989 wedding invitation addressed to Mr. and Mrs. B. Ramharack at the "marital” residence in Queens, and an invoice for fuel oil addressed to Sylvie Ramharack at the Queens residence.

. Pursuant to a Family Court order, the defendant is the acknowledged father of the oldest daughter (born in 1985) and is paying $35 per week for child support. While the defendant has not yet legally acknowledged the second daughter (born in 1990) as his child, his lawyer has told the court that she is also the defendant’s child and that the defendant would be willing to pay child support for both children if the plaintiff would withdraw her lawsuit.