

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-4-1994

# Freck v. IRS

Precedential or Non-Precedential:

Docket 93-7007

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Freck v. IRS" (1994). *1994 Decisions.* Paper 151.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/151

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 93-7007

————————

LUCY FRECK, a/k/a Lucy Cameron,
                    Appellant

v.

INTERNAL REVENUE SERVICE,
                    Appellee

————————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 90-02141)

————————

Submitted Under Third Circuit LAR 34.1(a)
July 21, 1993

PRESENT:  STAPLETON, HUTCHINSON and ROTH, Circuit Judges

(Filed October 6, 1994)

————————

Lucy Freck
P.O. Box 411
Gilbert, PA     18331
        Pro Se Appellant

Michael L. Paup, Esquire
  Acting Assistant Attorney General
James J. West, Esquire
  United States Attorney
Gary R. Allen, Esquire
Gilbert S. Rothenberg, Esquire
Curtis C. Pett, Esquire
United States Department of Justice
Tax Division
P.O. Box 502

Washington, DC    20044
              Attorneys for Appellee

———————

OPINION OF THE COURT

———————

HUTCHINSON, <u>Circuit Judge</u>.


Appellant, Lucy Freck ("Freck"), a/k/a Lucy Cameron,
appeals <u>pro se</u> a judgment the United States District Court for
the Middle District of Pennsylvania entered against her and in
favor of the United States on her claims for refunds of income
taxes the Internal Revenue Service ("IRS")[1] collected for 1978,
1979, and 1980.[2]  During each of these three tax years, Freck and
a man named William Cameron ("Cameron") signed and filed joint
income tax returns.  When Freck signed these returns, she thought
that she was Cameron's common law wife but neither New York nor
New Jersey, the only two states in which Freck and Cameron
cohabitated, recognize common law marriage.  Freck seeks refund
of a payment of $32,500.00 that a lawyer remitted to IRS out of a
settlement fund due her and her current husband, Stephen Freck,
without instruction as to its application.  The fund arose from

---

[1].  The caption to this case lists Internal Revenue Service as
appellee.  Neither the Commissioner of the IRS nor the IRS is
necessarily the proper party to a suit.  <u>See</u> <u>Brennan v.</u>
<u>Commissioner</u>, 581 F. Supp. 28, 29 (E.D. Mich.) (amending caption
to read United States), <u>aff'd</u>, 752 F.2d 187 (6th Cir. 1984);
<u>Krouse v. United States Gov't Treasury Dep't</u>, 380 F. Supp. 219
(C.D. Cal. 1974).

[2].  The district court entered judgment against Freck on the
merits of her 1978 refund claim and dismissed Freck's claims for
refunds for years 1979 and 1980 for lack of subject matter
jurisdiction.  <u>Freck v. I.R.S.</u>, 810 F. Supp. 597, 601–02 (M.D.
Pa. 1992).

an unrelated state lawsuit settled in 1988.  IRS contends it was entitled to the settlement funds by virtue of tax liens arising out of taxes assessed against Cameron and Freck on income attributable to Cameron for tax years 1978, 1979 and 1980 and, in the absence of instructions, that it was entitled to credit the payment first to interest and principal for the earliest years or in the manner most advantageous to the government.  The district court concluded that Freck could not qualify for relief from the assessment under 26 U.S.C.A. § 6013(e)(1) (West Supp. 1994) as an innocent spouse because she was never married to Cameron.  It then accepted IRS's argument that she was equitably estopped from asserting she was not liable for taxes on Cameron's income because of IRS's reliance on her innocent misrepresentation that Freck was Cameron's wife in giving him the benefit of the lower joint rates he was not entitled to as a single person during taxable years now closed.

Freck contends the settlement funds were paid to IRS by her adversary's counsel without her knowledge and that she had no opportunity to tell IRS how to apply them.  She also argues that if she is barred from claiming an "innocent spouse" exemption under 26 U.S.C.A. § 6013(e)(1)[3] because her common law marriage

---

[3]. This exemption provides:

> **(e)  Spouse relieved of liability in certain cases.--**
>
> > **(1)        In general.--**Under regulations prescribed by the Secretary, if--

is not recognized by New York or New Jersey, she should be allowed to amend her returns to reflect her status as a single taxpayer for her own 1978, 1979 and 1980 tax years, all of which do remain open.[4]

(..continued)

> **(A)** a joint return has been made under this section for a taxable year,
>
> **(B)** on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,
>
> **(C)** the other spouse establishes that in signing the return he or she did not know, and had no reasons to know, that there was such substantial understatement, and
>
> **(D)** taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,
>
> then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.

26 U.S.C.A. § 6013(e)(1).

[4]. A tax year may be closed by virtue of the statute of limitations or res judicata. Generally, the amount of any tax imposed must be assessed within three years after the return was filed, unless there has been a substantial omission from gross income in which case the tax may be assessed within six years after the return was filed. See 26 U.S.C.A. §§ 6501(a), 6501(e)(1)(A) (West Supp. 1994). After these statutory periods of limitations have run, the tax year is closed for purposes of

The district court found the payment made on Freck's behalf was voluntary but failed to make any finding as to whether Freck had an opportunity to exercise her right to direct the application of that payment.  We believe a taxpayer who volunteers a payment should be given an opportunity to tell IRS how to allocate her payment against any unsatisfied assessments against her.  Therefore, we will remand the case for further proceedings so the district court can make a finding on whether Freck had that opportunity.  Because of IRS's strict insistence

(..continued)
tax assessment unless certain stringent requirements, not applicable to this case, are met under 26 U.S.C.A. §§ 1311-14 (West 1988) (allowing government to correct error made in prior closed tax year).

A claim for credit or refund of an overpayment of any tax for which the taxpayer is required to file a return must be filed within three years from the time the return was filed or two years from the time the tax was paid, whichever is later.  If no return was filed by the taxpayer, the claim for a refund must be filed within two years from the time the tax was paid.  See id. § 6511(a).

Freck's 1978, 1979 and 1980 tax years are open because IRS assessed the tax within six years after the returns were filed, and Freck sought a refund within two years after paying the assessment.  However, it was not until after the statute of limitations had run on the prior years that IRS discovered Freck and Cameron were not married.  Therefore IRS is time-barred from recalculating the taxes Cameron would have owed under the higher rate IRS contends should have been applied.  Brief for Appellee at 33.  IRS produced no evidence showing how much it lost by relying on Freck's innocent misrepresentation of her status as Cameron's spouse.  Freck testified it was about $6,250.00.  IRS's allocation of the payment left Freck with taxes of about $15,000.00 still due instead of about $2,500.00 that would still be due if the payments had been allocated as she wished.  It also left her with a liability for $32,000.00 in interest that IRS continues to accrue on the $15,000.00 balance of tax that it claims.  See infra notes 6 & 9 for original deficiencies and balances due after IRS allocation.

on its legal right to allocate the payment made on Freck's behalf in the manner most advantageous to the government and so leave Freck with a large and ever-growing liability for an assessment of tax and interest on income that was not hers, we also believe the district court should not have accepted IRS's equitable estoppel argument without considering whether IRS's appeal to equity was foreclosed by the equitable maxim that he who desires equity must be willing to do equity.

## I.

Freck and Cameron lived together in New Jersey and New York for about ten years, from 1972 until 1982. Neither state recognizes common law marriages, and Freck and Cameron never took steps to legitimize their relationship through any type of formal ceremony. They did have three children. Cameron was the sole breadwinner for all five members of his family. He started his business career as a "runner" on the New York Commodity Exchange. In 1980, he incorporated the "L and B" Trading Corporation ("L and B") to conduct business as a commodities trader. He was "L and B's" sole stockholder.

IRS has been unable to produce the filed original of Freck's and Cameron's returns for any of the years in question. At trial, it offered what appears to be a copy of the 1978 tax return on which Freck's signature appears as Lucy Cameron. The district court admitted the copy. IRS does not have either originals or copies of Freck's or Cameron's returns for 1979 and

1980, but records it also offered and admitted at trial indicate that joint returns were filed for these years.

Freck could not recall signing the tax returns but testified at trial she would probably have done so if Cameron had asked her to. Freck took no part in managing the family's finances beyond handling the basic household expenses out of an allowance Cameron provided her. Freck also said that if she did sign the joint returns for 1978, 1979, and 1980, she would have accepted the figures Cameron presented to her without any reason to believe they were false.

In October of 1979, Freck and Cameron purchased a home at 9 Euclid Avenue, Ridgefield Park, New Jersey. They made a $7,000.00 down payment and financed the $50,000.00 balance with a mortgage. Freck testified that she became aware that Cameron was experiencing financial difficulties as a result of his trading on the commodities exchange sometime during that year. By 1981, Cameron was in arrears on periodic payments due on the mortgage and delinquent on the real estate taxes assessed against the home.

On their 1978 tax return, Cameron reported a gross income of $13,200.00 and, improperly using the joint rates, claimed a refund of $703.00. In 1979, Freck and Cameron received a refund of $89.00, again with the improper benefit of the joint rates. In 1980, they reported a tax liability of $15,125.00 but failed to pay it. The district court found Freck acted innocently without any intent to mislead IRS.

In 1982, Freck and Cameron separated.  Freck continued to reside at the 9 Euclid Avenue address; Cameron moved to 173 Martin Avenue, Staten Island, New York.  On February 23, 1983, Freck and Cameron sold a two-thirds interest in the residence at 9 Euclid Avenue to Freck's brother and sister-in-law and a one-third interest to Freck's brother Thomas, for a total of $62,500.00.  Freck and her three children continued to reside at 9 Euclid Avenue, and Thomas later transferred his one-third interest in the property back to Freck.

Cameron's abandonment of his family forced Freck and her children to go on welfare in April 1983.  They remained on the welfare rolls until January 1986, but Freck attended college during this time, and in 1986 she obtained full time employment as a secretary.  In April 1987, Freck married Stephen Freck.  The Frecks took up residence at 9 Euclid Avenue.

In 1983 IRS performed an audit and recalculated Freck and Cameron's tax liabilities, using the rates applicable to joint returns, as follows:

| 1978 | corrected taxable income | $32,510.00 | |
| | tax deficiency | | $ 7,118.00[5] |
| 1979 | corrected taxable income | $61,255.00 | |
| | tax deficiency | | $19,778.00 |

---

[5].  The IRS also assessed a fraud penalty of $3,559.00 against Cameron for the 1978 tax year.  No fraud penalty was assessed against Freck.

```
1980      corrected taxable income    $36,158.00
                tax deficiency                       $ 8,274.00

                         Total Deficiencies          $35,170.00[6]
```

See Appendix ("App.") at 35, 38.

On December 9, 1983, IRS sent Freck and Cameron a statutory notice of deficiency by certified mail addressed to 173 Martin Avenue and sent a copy of the notice to 9 Euclid Avenue, also by certified mail. The notice mailed to 173 Martin Avenue, Cameron's last known address, was returned to IRS marked "return to sender, moved left no address." Freck admits that she resided at 9 Euclid Avenue in December 1983 but denies receiving the notice of deficiency. When neither Cameron nor Freck paid the deficiencies or filed a timely petition for review by the Tax Court, see 26 U.S.C.A. §§ 6213-14, 7442 (West 1989), IRS assessed the deficiencies pursuant to section 6213(c) and, in June 1987, filed a notice of federal tax lien against 9 Euclid Avenue pursuant to 26 U.S.C.A. §§ 6321, 6323(f) (West 1989 & Supp. 1994).

That same year, Freck became involved in a dispute with the brother and sister-in-law who had jointly acquired record title to a two-thirds undivided interest in the 9 Euclid Avenue property as a result of the 1983 sale. They filed an action in state court against the Frecks and her other brother Thomas. The parties agreed to settle this case in September 1988. Under the

---

[6]. IRS's allocation of the $32,500.00 payment left Freck still owing about $15,000.00 in taxes. See supra note 4 and infra note 9.

settlement, the Frecks were to receive $40,000.00 in exchange for whatever interest they had in the 9 Euclid Avenue property.[7]

On September 27, 1988, Mark Winkler, Esquire of the law firm of Woodcock & Kingman mailed IRS a check for $32,500.00 from the settlement fund in exchange for a release of the tax lien against the property. The letter stated:

> Pursuant to our conversation [today] enclosed please find a certified check in the amount of $32,500 concerning Lucy Freck and a copy of the closing statement.
>
> As we discussed, upon receipt of the check you will release the discharge of 9 Euclid Avenue, Ridgefield Park, New Jersey as recorded in Federal Lien Book 166 at page 130, and the lien will be cancelled of record as to this property.

App. at 47. The record contains a copy of a check dated September 27, 1988 made out to IRS in the amount of $32,500.00 drawn on a bank account held by Woodcock & Kingman. The closing statement is not part of the record before us, and neither the letter nor the check reveal who Woodcock & Kingman represented.

Nevertheless, the district court found that Freck voluntarily made the payment to IRS through counsel. It noted

---

[7]. Freck alleges that $20,000.00 of this sum was to be paid to her and the remaining $20,000.00 was to be paid to Stephen Freck. Stephen Freck is not a party to the action. Freck does not explain why her brother Thomas was not entitled to a share of the $40,000.00, and the record does not explain the means by which Thomas's interest passed to the Frecks. The district court, however, states that in Freck's brief she explained that "at some point, Thomas [] transferred his one-third interest in the Euclid Avenue property to Lucy Freck." Freck, 810 F. Supp. at 600; see also Brief of Appellant at 3.

that the issue of whether Freck had been given an opportunity to tell IRS how to allocate the payment had been raised during the bench trial but the court did not consider either the legal effect of any lack of opportunity to allocate a voluntary payment or make any finding of fact as to whether Freck had any such opportunity. In any event, Winkler gave no specific directions to IRS about how this amount was to be applied in his letter forwarding the Woodcock & Kingman certified check.

The IRS applied $19,435.19 of the $32,500.00 against penalties and interest it had accrued on the 1978 tax assessment and the principal assessed for that year, fully discharging Freck's liabilities for that year. The remaining $13,064.81 was then applied to Freck's 1979 tax assessment. IRS's records indicate that this left a balance for 1979 of about $39,000.00 still outstanding against Freck as of December 31, 1991, made up of approximately $7,000.00 in taxes plus approximately $32,000.00 in penalties and interest for that year.[8] None of the $32,500.00

_____

[8]. On appeal, IRS's brief notes that as of January 16, 1992, Freck owed $39,782.12 for 1979 and $31,477.54 for 1980. Brief for Appellee at 15 note 2. It is not possible to determine independently from the record on appeal the amount and nature of the individual penalties involved. Presumably the 1979 and 1980 liabilities continue to grow as interest accrues on the reduced balance. Assessments are generally presumed valid and establish a prima facie case of liability against a taxpayer, see United States v. Janis, 428 U.S. 433, 440-41 (1976); Welch v. Helvering, 290 U.S. 111, 115 (1933); Psaty v. United States, 442 F.2d 1154, 1158-61 (3d Cir. 1971). A taxpayer in a refund action has the burden of showing they are incorrect, id., but we are not certain how an inability or failure on IRS's part to balance its figures or explain why it cannot do so affects the assessments' presumptive validity.

was left to apply to Freck's 1980 tax assessment of $7,827.00 or penalties and accrued interest on the 1980 deficiency.[9]

Following Winkler's remittance of the $32,500.00 payment to IRS, Freck's counsel, Robert Fee, filed amended returns seeking a refund on Freck's behalf for the years 1978, 1979, and 1980. On these returns, Freck contended that her correct filing status was single and that she herself had no taxable income during any of these years. She therefore sought a $32,500.00 refund for the tax year 1978, $50.00 for 1979 and $50.00 for 1980.[10] Freck also asserted that she was not aware that any tax deficiency had been asserted against her until July 1990 when an IRS auditor in Allentown, Pennsylvania reviewed her 1978 refund claim for $32,500.00 and denied it.

After IRS denied Freck's refund claims, she filed this action in district court pursuant to 28 U.S.C.A. § 1346(a)(1) (West 1993) to recover the $32,500.00 Attorney Winkler had sent IRS. The court granted Freck permission to proceed in forma pauperis on January 25, 1991. IRS filed its answer on May 3, 1991 and, on February 10, 1992, moved to dismiss Freck's action.

---

[9]. Thus, after Freck had paid $32,500.00 against taxes of about $35,000.00 on income attributable to the man who deserted her, IRS asserts, on the basis of an equitable doctrine, that its reliance on an incorrect misstatement, on which the evidence on the record shows it lost approximately $5,200.00, justifies it in collecting from Freck about $47,000.00 more in principal and interest as of December 31, 1991 with simple interest on a $15,000.00 balance of principal continuing to accrue. See also supra notes 4 & 6.

[10]. Freck remitted the additional $50.00 for 1979 and $50.00 for 1980 when she filed the amended returns.

In its answer, it also alleged that it was unable to locate Cameron.  Freck opposed IRS's motion to dismiss.  On June 26, 1992, the court issued an order denying IRS's motion to dismiss.

A bench trial began on August 6, 1992, and on December 3, 1992, the court entered judgment against Freck and in favor of the United States.  In an accompanying memorandum opinion, the court concluded that it lacked jurisdiction over Freck's 1979 and 1980 refund claims because Freck was only entitled to bring a refund action in district court for the years in which she had fully paid the tax assessed against her.  Freck, 810 F. Supp. at 601-02 (citing Flora v. United States, 362 U.S. 145 (1960)).  Therefore, the court limited its merits analysis to Freck's refund claim for tax year 1978.  Id.  It found that Freck had innocently signed the joint returns Cameron presented to her, but concluded she was not eligible for relief under section 6013(e)(1) as an innocent spouse because she was not married to Cameron under applicable state law.  Id. at 602-03.  On principles of equitable estoppel, the court then upheld IRS's argument that Freck's innocent misrepresentation of her joint filing status with Cameron prevented her from amending her returns to reflect her single status because the innocent misrepresentation induced IRS to accept less tax from Cameron than he would have owed filing singly.  Id. at 603-04.  Finally, the district court found that IRS had met the requirements of section 6212 of the Tax Code by sending a statutory notice of deficiency to Freck by certified mail.  Freck's failure to

receive it became immaterial under the statute because the notice was mailed to her last known address.  Id. at 604.

Freck filed a timely notice of appeal.  The district court's subject matter jurisdiction is dependent on 28 U.S.C.A. § 1346(a)(1).  We have appellate jurisdiction over the district court's final order pursuant to 28 U.S.C.A. § 1291 (West 1994).

## II.

On appeal, Freck argues that the district court erred when it concluded that it only had jurisdiction for the tax year 1978.  She contends that if she had been given an opportunity to tell IRS how to allocate the $32,500.00 payment, she would have told it to apply the payment to the tax owed for the years 1978, 1979 and 1980 exclusive of penalties and interest.  She asserts the $32,500.00 payment would have covered all the tax owed for 1978 and 1979 plus part of the tax owed for 1980 and the district court would therefore have had jurisdiction over her refund claim for 1979 as well as her claim for 1978.[11]  We have plenary review over the district court's ruling that it lacked subject matter jurisdiction.  Bumberger v. Insurance Co. of North Am., 952 F.2d 764, 766 (3d Cir. 1991).[12]

---

[11].  Freck appears to argue that such an application could also have covered her 1980 tax deficiency, but the record indicates that the $32,500.00 payment would not have covered the principal amounts assessed against her for all three years.  See also supra notes 6 & 9.

[12].  We note that our preliminary inquiry into jurisdiction also tends to require some preliminary inquiry into the merits of Freck's argument on allocation of the $32,500.00 payment.

III.

Section 1346(a)(1) provides:
(a)  The district courts shall have
original jurisdiction . . . of:

(1)  Any civil action against the
United States for the recovery of any
internal-revenue tax alleged to have
been erroneously or illegally assessed
or collected, or any penalty claimed to
have been collected without authority or
any sum alleged to have been excessive
or in any manner wrongfully collected
under the internal-revenue laws[.]

28 U.S.C.A. § 1346(a)(1) (in relevant part).  In Flora, the

United States Supreme Court held that section 1346(a)(1) requires

a tax assessment to be paid in full for the year for which a

refund is claimed before a district court can gain subject matter

jurisdiction over the refund claim for that year.[13]  Flora, 362

U.S. at 150, 163; see also Psaty v. United States, 442 F.2d 1154,

1158 (3d Cir. 1971).  Because IRS decided to apply the $32,500.00

payment first to interest, penalties and tax for the earliest

year, 1978, the 1979 assessment against Freck has not been fully

---

[13].  If a party does not make full payment of a particular tax
assessment, he or she can only challenge the assessment in the
Tax Court.  To do so, however, the taxpayer must file her Tax
Court petition within ninety days of the date IRS sent its
statutory notice of deficiency.  See 26 U.S.C.A. § 6213(a) (West
Supp. 1994).  The taxpayer's failure to receive a notice properly
mailed to the taxpayer's last known address does not extend or
toll the ninety days.  See Tadros v. Commissioner, 763 F.2d 89,
91-92 (2d Cir. 1985).  Here, the ninety days is long past, and
thus Freck has no remedy absent full payment of the assessed tax.

discharged and no credit at all has been given against the 1980 assessment.

Freck contends that she should have had an opportunity to tell IRS how to allocate the $32,500.00 pursuant to Revenue Ruling 73-305.[14] She claims that Woodcock & Kingman, the law firm which made the payment to IRS, did not represent her and did not give her an opportunity to tell IRS how to allocate her voluntary payment to the deficiencies for the years in question. She also contends that IRS intentionally took the money directly from Woodcock & Kingman so that Freck would not have a chance to allocate the payment.[15] She argues that if she had the chance, she would have told IRS to apply the payment solely to the tax assessed against her instead of interest and penalties and that

---

[14]. Revenue Ruling 73-305 states, in pertinent part:

> A partial payment of assessed tax, penalty, and interest made by a cash method taxpayer with directions as to its application will be so applied. A partial payment on assessed deficiencies . . . received without instructions for its application will be applied to tax, penalty, and interest in that order, starting with the earliest period. . . .

Rev. Rul. 73-305, 1973-2 C.B. 43. IRS seems to have followed this ruling in allocating the payment on Freck's behalf, even though it now seems to contend allocation should be governed by Revenue Ruling 79-284, 1979-2 C.B. 83, which IRS argues gives it discretion to allocate partial payments in whatever manner best serves the government.

[15]. Freck also states IRS itself did not know what her deficiencies for 1979 and 1980 were at that time, nor did it tell her so that she could have made an informed allocation of the payment if she had been given the opportunity.

her tax liabilities for both 1978 and 1979 would have been extinguished. According to Freck, only the principal amount of any annual income tax assessment, and not penalties or interest thereon, need be paid in full in order to give a district court subject matter jurisdiction over a refund claim for any particular year pursuant to 28 U.S.C.A. § 1346(a)(1). Brief for Appellant at 12-13 (citing Kell-Strom Tool Co. v. United States, 205 F. Supp. 190, 193-94 (D. Conn. 1962) (Flora does not require payment of interest, only payment of tax assessed)).[16] Thus, if Freck had been given a chance to allocate the payment the district court found voluntary, as she now says she would, IRS would have had to apply the $32,500.00 to principal for all three years instead of first to the interest, penalties and principal that had accrued for 1978. The district court would then have had jurisdiction over Freck's 1979 refund claim as well as the 1978 claim.[17]

---

[16]. The IRS does not specifically argue to the contrary on appeal, and the cases it cites hold only that a taxpayer must pay the full amount of a tax assessment before the taxpayer may seek a refund of the tax in district court. See, e.g., Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1993) (district court had no jurisdiction over estate's refund action where estate had only paid part of assessed estate tax before bringing action, absent limited exceptions not available here); Curry v. United States, 774 F.2d 852, 854 (7th Cir. 1985) (district court had no jurisdiction over taxpayer's refund action where taxpayer had failed to pay assessed tax in full before bringing action); Ardalan v. United States, 748 F.3d 1411, 1413 (10th Cir. 1984) (same); Psaty v. United States, 442 F.2d 1154, 1158-59 (3d Cir. 1971) (holding taxpayer must pay full amount of indivisible tax assessment or penalty before taxpayer can challenge its validity in district court).

[17]. Freck's argument on allocation would not affect the 1980 assessment. Accordingly, the district court could still lack

IRS, relying on various revenue rulings, contends it has an absolute right to decide how any partial payment shall be applied as against interest, penalties or principal unless the taxpayer specifically directs the manner in which a voluntary partial payment is to be applied. When a taxpayer, for whatever reason, fails to specify how a payment should be applied, IRS says it has discretion to allocate the payments "to tax, penalty, and interest in a manner serving the best interest of the Service." Rev. Rul. 79-284, 1979-2 C.B. 83. Conceding a taxpayer's right to tell it how to allocate a voluntary partial payment, IRS goes on to assert that the taxpayer must specify the allocation she desires at the time the payment is made to IRS.

The cases IRS cites do not deal with the argument Freck advances; namely, whether a taxpayer whom IRS has deprived of a contemporaneous opportunity to specify how a voluntary payment should be allocated at the time it is made may later require IRS to reallocate the payment. These cases do not hold that the failure to specify the allocation desired at the time the payment is forwarded is invariably fatal; rather, they hold that a taxpayer who makes a payment without telling IRS how to allocate

(..continued)
jurisdiction over that claim. Nevertheless, if Freck were successful in her argument that she is not equitably estopped from refiling as a single person for 1978, issue preclusion could come into play because that holding could preclude IRS from challenging Freck's status in suits over the other years. Accordingly, if Freck is not equitably estopped from claiming single filer status in 1978, her right to a refund for that year invalidates the 1978 assessment, leaving the $32,500.00 fully available against the 1979 and 1980 assessments, which could also be invalidated under principles of issue preclusion.

it may not later require IRS to reallocate the payment in a manner more favorable to the taxpayer. Our research has not uncovered any cases addressing the narrow issue of whether a failure to specify an allocation contemporaneously with the payment automatically destroys the right to allocate when IRS has obtained funds from a third party without giving the taxpayer an opportunity to tell that third party how the payment should be applied.

Although the district court found that Freck's payment was voluntarily made and that she did not designate how the payment was to be allocated, it did not determine whether Freck had an opportunity to tell IRS how to allocate the payment pursuant to Revenue Ruling 73-305, even though it acknowledged this issue was raised by the parties during the bench trial. Freck, 810 F. Supp. at 602 n.8. If Freck made the payment voluntarily, we think she should have been given some opportunity to allocate it as she wished under either Revenue Ruling 73-305 or 79-284. See United States v. Pepperman, 976 F.2d 123, 127 (3d Cir. 1992) (recognizing longstanding IRS policy allowing taxpayer to allocate voluntary payments but not involuntary payments).

There is no evidence in the record to support the district court's finding that Winkler was Freck's attorney. The only evidence concerning who Winkler represented was Freck's testimony that he represented her brother and sister-in-law and that her counsel was John Analin. In light of Freck's testimony and the district court's silence on the issue of Freck's opportunity to specify the allocation of the payment, we believe

this case should be remanded to the district court so that it can determine in the first instance whether Freck had an opportunity to direct IRS on the allocation of her voluntary payment.

In the event the district court decides that Freck had an opportunity to tell IRS how to allocate the $32,500.00 payment but simply failed to do so or chose not to, it may also become necessary for it to reconsider the equitable estoppel issue this case raises. All of the parties to this case as well as the court itself agree that Freck's misrepresentation was "innocent" because she did not know she was misrepresenting her marital status when she signed the joint returns and she did not know the returns were materially incorrect.[18] The determination of

---

[18]. Because Freck was acting innocently and in good faith in signing the tax returns, we have trouble understanding the basis for the award of penalties against her, another matter on which the record is unclear. We recognize that the penalties were not imposed for filing a fraudulent or false return, or for improperly signing the return as a joint return. Moreover, because Freck signed the return jointly, she is presumably jointly responsible for paying the tax deficiency that IRS assessed for the 1978-1980 tax years. IRS mailed Freck a notice of deficiency and thus, an addition to the tax, a penalty may have been imposed because she did not pay the deficiency assessed within ten days of the date of notice and demand. See 26 U.S.C.A. § 6651(a)(3) (West Supp. 1994). Such penalties decrease, however, as payments of the deficiency are made because section 6651(b)(3) requires that the tax due, the amount upon which the penalty is imposed, should be reduced from month to month as part payments of the tax are made. See id. Under the Internal Revenue Code applicable to this case, the IRS could also have imposed a 5% penalty if Freck had negligently filed her tax return, see 26 U.S.C.A. § 6653(a) (1989) (since amended), or a 75% penalty if Freck had filed the return with fraudulent intent. See 26 U.S.C.A. § 6653(b) (1989). It might also have advanced a right to impose a 25% liability if Freck's return substantially understated income tax. See 26 U.S.C.A. § 6661 (1989). These penalty provisions were revised in 1989. Act of Dec. 19, 1989, Pub. L. No. 101-329, 103 Stat. 2395 (codified as amended at 26 U.S.C.A. §§ 6651-6665 (West Supp. 1994)). Presently the IRS may

whether Freck was a "spouse" entitled to innocent spouse relief is governed by the laws of the state of the marital domicile of the parties. See generally Boyer v. Commissioner, 732 F.2d 191, 194 (D.C. Cir. 1984), cert. denied, 469 U.S. 1114 (1985); Estate of Buckley v. Commissioner, 37 T.C. 664, 672 (1962). Thus, IRS is legally correct in its contention that Freck is not entitled to claim the "innocent spouse" exemption because her common law marriage is not recognized under the laws of the states of New York and New Jersey. See N.J. Stat. Ann. § 37:1-10 (West 1968) (common law marriages invalid after 1939); Parkinson v. J&S Tool Co., 313 A.2d 609 (N.J. 1974); N.Y. Dom. Rel. Law § 11 (McKinney 1994); Ram v. Ramharack, 571 N.Y.S.2d 190, 191 (N.Y. Sup. Ct. 1991).

IRS, after relying on strict legal arguments concerning its right to allocate the partial payment made on Freck's behalf, resorts to equitable principles of estoppel to prevent Freck from denying she was a "spouse" and to preclude her from amending her tax returns to reflect her own corrected legal status as a single taxpayer. If Freck did have an opportunity to instruct IRS how to apply the payment Winkler made, IRS would be legally correct in insisting on its right to allocate that payment strictly in the government's best interest without regard to the effect on Freck, but in that case it seems to us that IRS's dual argument

(..continued)
impose a 20% penalty for inaccurate returns resulting from negligence, a disregard of rules or regulations or a substantial understatement of income tax. 26 U.S.C.A. § 6662 (West Supp. 1994).

that Freck then is estopped from denying she was Cameron's spouse, even though she cannot claim innocent spouse status, is not only unfairly inconsistent but fundamentally inequitable.[19] Based on a loss of $5,200.00, it seeks to invoke an equitable estoppel against Freck that will cost her not only the $32,500.00 already paid but will leave her still owing $47,000.00 as of December 31, 1991 with interest on a balance of about $15,000.00 in principal continuing to accrue.[20]

Under these circumstances, before accepting IRS's argument on behalf of the sovereign federal government, it seems appropriate for the district court to consider the old equitable maxims, "He who seeks equity must do equity," which the chancellors used to apply when they sat as the conscience of a sovereign king. We realize, of course, that equitable principles do not generally preclude IRS from collecting taxes that are legally owed. See Office of Personnel Management v. Richmond, 110 S. Ct. 2465, 2469 (1990); Bokum v. Commissioner, 992 F.2d 1136, 1141 (11th Cir. 1993) (citing Heckler v. Community Health Serv., 467 U.S. 51, 60 (1984)); Keado v. United States, 853 F.2d 1209, 1271-18 (5th Cir. 1988). We think, however, that these cases are distinguishable from Freck's case because here IRS itself relies on equitable principles to collect taxes from Freck that are not attributable to her income.

---

[19]. The parties have not raised the doctrine of judicial estoppel. Therefore, we have no occasion to consider its application to IRS's seemingly inconsistent arguments.

[20]. See supra notes 4, 6 & 9.

If the district court concludes Freck did have an opportunity to allocate the $32,500.00 payment and that it is nevertheless appropriate to estop Freck from claiming she was not married to Cameron, it may also wish to consider whether IRS should be limited to recovering the difference between Cameron's tax liability as a single filer and the liability it incorrectly assessed against him because Freck innocently misrepresented the couple's right to a joint filing status.  Cf. Restatement (Second) of Contracts § 90 cmt. d; Bechtel v. Robinson, 886 F.2d 644, 647 (3d Cir. 1989).  Freck claims these differences total only $1,159.00 for tax year 1978 and $5,194.00 for the full three years.  IRS has not itself pointed to any other evidence in this record that would show what amounts Cameron would have owed for closed years if IRS were limited to reliance damages.

IV.

We will vacate the district court's order entering judgment against Freck and in favor of the United States and remand for further proceedings consistent with this opinion.

TO THE CLERK:

Please file the foregoing opinion.

Circuit Judge

October 5, 1994


TO:        P. Douglas Sisk, Clerk

FROM:      Judge Hutchinson

RE:        Freck v. IRS
           No. 93-7007


Dear Doug:


        I enclose the opinion in the above captioned matter for

filing.  The signed original is being forwarded to your office

today by mail.


                             Sincerely,


                             William D. Hutchinson

WDH:jam
Enclosure

cc. Judge Stapleton (letter only)
    Judge Roth (letter only)
    Patricia McCafferty, Asst. Systems Manager (letter only)