In re Richard F. MORGAN, Mary A. Morgan, Debtors.

The FIRST NATIONAL BANK OF MT. DORA, FLORIDA, Plaintiff,

v.

V. John BROOK, Jr., Chapter 7 Trustee, Richard E. Morgan, Mary A. Morgan, and Joseph Morgan, Defendant.

United States of America, Intervenor.

and

Richard E. and Mary A. MORGAN, Cross–Plaintiffs,

v.

UNITED STATES of America, Cross–Defendants,

and

UNITED STATES of America, Cross–Plaintiffs,

v.

V. John BROOK, Jr., Chapter 7 Trustee, Richard E. Morgan, Mary A. Morgan, and Joseph Morgan, Cross–Defendants,

and

V. John BROOK, Chapter 7 Trustee, Cross–Plaintiff,

v.

Richard MORGAN a/k/a Richard E. Morgan, Mary A. Morgan, and Joseph Morgan, Cross–Defendants.

Bankruptcy No. 95–4824–8P7.
Adversary No. 95–469.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 6, 1997.

Roberta Colton, Tampa, FL, for Plaintiff.

Alan C. Watkins, Tampa, FL, David B. McEwen, Schneikart & McEwen, P.A., St. Petersburg, FL, for V. John Brook.

Brian L. Schwalb, Trial Attorney, U.S. Dept. of Justice, Tax Division, Washington, DC, for U.S.

V. John Brook, Jr., St. Petersburg, FL, Trustee.

## ORDER ON· MOTIONS FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matters under consideration are three Motions for Summary Judgment filed by the United States of America (Government); V. John Brook (Trustee); and Richard E. Morgan and Mary A. Morgan (Debtors), respectively. In order to place the Motions in their proper perspective, it is helpful to briefly recap the procedural background of this adversary proceeding, originally styled, *The First National Bank of Mt. Dora, Florida (Bank) v. V. John Brook, Jr., Chapter 7 Trustee, Richard E. Morgan, Mary A. Morgan, and Joseph Morgan, Defendants.* On July 6, 1995, the Bank filed its Complaint for Interpleader. On August 9, 1996, this Court entered an Order granting leave to the Government to intervene. The Order was entered on October 16, 1996, after this Court overruled the Debtor's objection to the inter-

vention by the Government. The Order also granted thirty days to the Government to file cross-claims against the Debtors and the Trustee, and thirty days to the Debtors to file a cross-claim against the Trustee and the Government.

On October 30, 1996, the Debtors filed their Cross–Claim against the Government. On November 13, 1996, the Government filed its Cross–Claim against the Trustee and the Debtors. On November 15, 1996, the Trustee filed his Cross–Claim against the Debtors. On November 30, 1996, the Bank deposited the funds in controversy in the Registry of this Court pursuant to an Order entered by this Court on July 31, 1995, granting partial summary judgment of interpleader in favor of the Bank. Thus, left for consideration are the competing claims to the funds in the Registry by the Government, the Trustee, and the Debtors.

The controversy presented for this Court's consideration is the three Motions for Summary Judgment described earlier, in which each of the Movants contend that there are no genuine issues of material fact and that each is entitled to a judgment in their respective favors as a matter of law. In its Motion, the Government contends that the Debtors are indebted to the Government for unpaid, assessed income tax liabilities for the years 1992 up to and including 1995; that as a matter of law, the Government has a lien on all assets of the Debtors, including the funds held by them in the Bank which are now deposited in the Registry; and that the controlling facts are not in dispute. Therefore, the Government contends that its Motion should be granted as a matter of law. In his Motion, the Trustee contends that he and his wife obtained a judgment against the Debtor, Richard Morgan, for slander of title; that in aid of execution of this judgment he garnished the funds which are in the Registry; that he has an agreement with the Government as to the respective priorities of the Trustee and the Government; and that based on the undisputed facts he acquired a valid lien on the funds vis-a-vis the Debtors. Therefore, the Trustee contends that his Motion for Summary Judgment should be granted.

Finally, the Debtors, in their Motion consisting of fifteen separate paragraphs, contend inter alia that this Court erred in permitting the Government to intervene due to "lack of knowledge"; that there is no such entity as the "Internal Revenue Service" set forth in the Constitution nor in any law written by Congress; that the assessment was improper because it was not signed by an "assessment officer"; that the Government lost all of its immunity (or sovereignty) when it filed a claim in the Bankruptcy Court; that the Proof of Claim filed contains an illegible signature; that the Proof of Claim is not supported by any documents; that the "United States of America nor the Internal Revenue Service" addressed the proof to a Table of Authorities provided by the Debtor; and that the Government successfully convinced the Court that it acquired a new client, the Southern Bank, even though "the Southern Bank sent no representative to a hearing." In addition to the foregoing, the Debtors also set forth various and sundry statements, none of which are remotely relevant to their Motion for Summary Judgment. Therefore, it is unnecessary to either recite or paraphrase them.

The Debtors in the Wherefore Clause of their Motion request the following relief:

1. Order the monies in the Registry to be paid over to the Debtors.

2. Order any monies held in the estate to be paid over to the Debtors.

3. Order the sanction of the United States of America for representing the Southern Bank of Central Florida.

4. Order the non-existent "Internal Revenue Service" sanctioned for its entry of a non-perfect document described as "Form 10."

5. Order an award of justicable (sic) money to the Debtors for the Department of the Treasury/Internal Revenue Service; as described by Title 18 United States Code; Sections 152 and 3571; for the violation in not submitting assessment forms signed by an "assessment officer" with properly delegated (published in the Federal Register) authority to sign such a documents.

6. Issue any other orders deemed justicable (sic).

In addition, the Debtors also filed a document entitled, "Objections to the Government's and Brook's Motions for Summary Judgment." Neither the Rules which govern adversary proceedings nor any other rule of procedure provide for an "objection to summary judgment." Nevertheless, this Court considers the same as a response and written argument against the Motions filed by the Government and the Trustee. Stripping the document of largely meaningless and irrelevant rhetoric, the Debtors' argument presents nothing new and is, in essence, a rehash of the matter set forth in their Motion for Summary Judgment, reiterating a twenty-five page document with some reprint from the Internal Revenue manual and citations which are claimed to support the proposition urged by the Debtors. It shall suffice to note that the foregoing contentions of the Debtors are merely restatements of the old refrain that the Internal Revenue Service (IRS) does not exist; that there is no obligation to pay income tax; that the system is voluntary; that there is nothing in the Internal Revenue Code providing that any part of earnings known as wages and commissions is regulated; that no one has an obligation to file Form 1040; and that there was no valid assessment of unpaid taxes against the Debtors.

The one and only issue involves the validity, vel non, of the tax and the garnishment liens claimed by the Government and the Trustee respectively. The facts relevant to this issue as they appear from the record can be summarized as follows.

It is without dispute that the Debtors did not file an income tax return (Form 1040) for the tax years of 1993, 1994, and 1995. On April 10, 1995, the IRS addressed a request to Richard Morgan urging him to file his tax return for the tax year ending December 31, 1993. On March 18, 1996, the IRS informed Mary E. Morgan that she failed to file her tax returns for 1993, 1994, and 1995, and urged her to file her tax returns. On June 3, 1996, the IRS requested that both Debtors contact the IRS within ten days and stated that if they failed to do so, the IRS would

proceed with other action to bring them into compliance with the tax laws. (Govt. Exh. 7).

On June 10, 1996, Richard Morgan wrote to N. Kenyon, Tax Auditor, an employee of the IRS, and informed Mr. Kenyon that he does not meet the definition of a person who is required to file any Form 1040. Mr. Morgan also demanded that the IRS furnish him with an authoritative regulation to show that he is required to file a tax return, and send him any information the IRS had as to what his gross or taxable income was for the years in question and from what source derived, plus additional documentation to show Mr. Kenyon's authority to send the letters (Govt. Exh. 8). Mrs. Morgan sent an identical letter to Mr. Kenyon.

After concluding the audit, the IRS made a jeopardy assessment of the federal income tax liabilities of Mr. Morgan for the years 1993, 1994, and 1995 in the total amount of $138,286.97 (Certificate of Assessment and Payments) (Govt. Exh. 9). On July 24, 1996, the IRS made a jeopardy assessment of Mrs. Morgan's federal income tax liability for the years 1993, 1994, and 1995 in the total amount of $97,703.60 (Certificate of Assessment and Payments, Govt. Exh. 10). On July 24, 1996, the IRS mailed a Notice of Jeopardy Assessment and Right to Appeal (Govt. Exhs. 11, 12). The Notice was sent to both Mr. and Mrs. Morgan.

On July 14, 1996, the IRS filed a Notice of Federal Tax Lien (Form 668(Y)) in the amount of $138,286.97 based on the tax liability assessed against Mr. Morgan. The Notice was filed in the Office of the County Comptroller. (Govt. Exh. 13). In addition, on July 14, 1996, the IRS served Notices of Levy upon the Clerk of the Bankruptcy Court, one concerning the tax liability of Mr. Morgan, the other of Mrs. Morgan (Govt. Exh. 14).

On May 18, 1995, the Debtors filed their joint Petition for Relief under Chapter 7 of the Bankruptcy Code. (Doc. No. 1). On their Schedule of Assets, the Debtors listed a joint checking account at the First National Bank of Mount Dora, Florida (Bank), stating a balance of $100,000.00. It is without dispute that on the date the Debtors filed their Petition they had three separate accounts in the same Bank: Accounts Numbers 0220338453, 02220338024, and 220338013, respectively. At the time the Debtors filed their Petition, Mr. and Mrs. Morgan were the only signatories on these accounts. (Govt. Exh. 2). On June 19, 1996, after the commencement of the case, the Debtors amended their signature cards and added Joseph M. Morgan, their son, as an additional signatory. (Govt. Exh. 3). There is nothing in this record and it is not contended by the Debtors that Joseph Morgan contributed to the funds on deposit in the Bank.

In due course, V. John Brook was appointed as Chapter 7 Trustee and placed in charge of the administration of the estate of the Debtors. On June 28, 1995, the Trustee made a written demand on the Bank to turn over all funds in the accounts maintained by the Debtors. (Govt. Exh. 4). On July 5, 1995, Joseph Morgan made a written demand on the Bank and requested that the funds in the accounts be wire-transferred to the Bank of Mississippi, Tupelo, Routing No. 0653–00486, Account Number 22379440. (Govt. Exh. 5). Faced with the two competing claims to the funds in the three accounts, the Bank filed its Complaint for Interpleader. (Doc. No. 11). The Government was not named initially by the Bank as a defendant. On July 31, 1995, this Court entered a Partial Final Judgment in favor of the Bank, directing the Bank to deposit in the Registry all funds in the three bank accounts. (Doc. No. 23). On August 17, 1995, the Bank deposited in the Registry in the amount of $125,943.49 in compliance with the Partial Final Judgment. (Adv. Doc. No. 26).

On July 27, 1995, the Debtors converted their Chapter 7 case to a Chapter 13 case, (Doc. No. 12), but on September 12, 1995, the Chapter 13 case was reconverted to a Chapter 7 case on the motion filed by the Trustee (Doc. No. 53).

On August 28, 1995, the IRS filed a Proof of Claim in the amount of $60,322.27. (Govt. Exh. 6). The Proof of Claim was filed as secured based on the federal tax liens for assessed and unpaid income tax liability for the years 1990 through 1992, inclusive. On November 6, 1995, this Court dismissed the

Debtor's Chapter 7 case, retaining jurisdiction to determine fees and costs and to order the disbursement of the funds being held by the Clerk of the Bankruptcy Court. Furthermore, it is understood by all parties that the Court reserved jurisdiction to determine the respective right of the claimants to the funds deposited by the Bank in the Court's Registry. (Doc. No. 69).

On May 8, 1996, after the case had been dismissed, the Debtors filed an objection to the Proof of Claim filed by the IRS. On May 22, 1996, this Court overruled the objection and after the IRS collected the assessed income tax liabilities of the Debtors for years 1990 through 1991, this Court allowed the Government's claim against Mr. Morgan in the amount of $886.70, and against Mrs. Morgan in the amount of $17,715.23. (Doc. No. 106).

As noted earlier, on October 16, 1996, this Court granted leave to the Government to intervene in the interpleader filed by the Bank. The Government filed its Motion to Intervene, (Adv. Doc. No. 42), coupled with a Cross–Claim, (Adv. Doc. No. 44), as well as a response to the Cross–Claim filed by the Debtors, (Adv. Doc. No 43). On January 31, 1997, this Court granted the Government's Motion to Intervene. (Adv. Doc. No. 53). Although this Court granted leave to Joseph Morgan to file a cross-claim asserting his claim against the fund in the Registry, he failed to file a cross-claim within the time fixed by this Court. Consequently, Joseph Morgan no longer has any claim against the funds in the Registry. The Government in its Cross–Claim asserted that the Government has a valid tax lien securing the Debtor's unpaid assessed federal income tax liability for the tax years of 1993, 1994, and 1995 in the total amount of $254,000.00, made up of the amount of the liability of Mr. Morgan and the amount of the liability of Mrs. Morgan in the amount of $103,539.95, plus interest and statutory additions.

The Trustee and his wife are the fee simple owners of their homestead, located in Pinellas County, Florida. There is no question that the Debtor was aware that the Trustee's residence in Pinellas County was his properly established homestead. Not-withstanding, Mr. Morgan recorded in the Office of the Clerk of the Circuit Court of Pinellas County, in O.R.Book 9190, Page 1845, an instrument dated December 12, 1995, claiming a "common law" lien, or a "commercial lien" on the Trustee's homestead.

In order to remove this cloud on the title on his homestead, the Trustee engaged the services of an attorney who filed a writ against Mr. Morgan to quiet title, for slander of title and also sought injunctive relief. On July 3, 1996, the Circuit Court in and for Pinellas County, Florida, entered its order on the Trustee's Motion for Summary Judgment, finding that the property involved was in fact the homestead of the Trustee, that the Notice of Lis Pendens recorded in the Public Records of Pinellas County is a cloud on the Trustee's title and shall be expunged. Furthermore, based on Fla.Stat. § 57.105, the Court entered a judgment in favor of the Trustee and against the Debtor, Mr. Morgan, for $1,950 together with taxable cost in the amount of $210.50, or a total of $2,160.50 bearing a rate of interest at 12% per annum.

As the Debtor had not satisfied the Judgment within the time ordered by the Court, the Trustee filed a Motion for Writ of Garnishment on July 15, 1996. On July 18, 1996, the Clerk of the Circuit Court issued the Writ which was served on the Clerk of the Bankruptcy Court on July 14, 1996. In due course, the Government filed an Answer to the Writ on behalf of the Government and the Clerk of the Bankruptcy Court. In its Answer, the Government stated on behalf of the Clerk that the Clerk is not indebted to Mr. Morgan, who is merely a stakeholder of the funds. On December 16, 1996, Christine R. Brook, the Trustee's spouse, assigned her interest in the Judgment to the Trustee (State Court Exhibit C). The Government and the Trustee agreed as to the respective priority of their claims to the fund. This leaves for consideration the dispute between the Government, the Trustee, and the Debtors.

## GENERAL PRINCIPLES GOVERNING SUMMARY JUDGMENTS

Motions for summary judgment are governed in adversary proceedings by F.R.B.P.

7056, which adopted Fed.R.Civ.P. 56. Fed. R.Civ.P. 56 is an integral part of federal practice and was designed to secure a just, speedy, and inexpensive determination of controversies where the relevant facts are not in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is well established that it is appropriate to dispose of the controversy

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

It is clear that the moving party has the burden to establish not only the absence of any genuine issue of material fact, but also that the controlling law supports, the claim and the relief sought. *Celotex v. Catrett*, supra; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). To assure that the non-moving party receives a fair consideration of its position and especially its right to a plenary disposition of the controversy if there are genuine issues of material facts, the underlying facts and all reasonable inferences must be viewed in a light most favorable to the non-moving parties. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is equally clear, however, that the non-moving party may not rely on mere allegations or denials in the pleadings. Instead, it must set forth specific facts in affidavits or through competent evidence that there are genuine issues of material facts which require a resolution by trial.

This Court is satisfied that there are no disputed facts which would prevent the disposition of the conflicting claims of the Government and the Debtors by summary judgment. The Government made repeated efforts to secure the tax returns for the years in question and the Debtors did not file the tax returns for the years in question. It is equally without dispute that the Government sent and the Debtors received the notices of the deficiency and the notice of assessments and demand for payment; that they failed and refused to pay the amount found to be due and assessed for the years in question; that the Government made a jeopardy assessment against Mr. Morgan for the years 1993, 1994, and 1995 in the total amount of $138,286.97 and made a jeopardy assessment against Mrs. Morgan for the unpaid taxes for the same years in the amount of $97,793.60; and that the Notice of Jeopardy Assessment and Right to Appeal, along with an explanation of the income tax determination and demand for payment, were sent to both Debtors.

It is clear that the moment the assessment is made a federal tax lien arises, and shall continue until the liability for the tax assessed is satisfied or becomes unenforceable due to lapse of time. 26 U.S.C. § 6322. The tax lien as a matter of law becomes a valid charge on all properties of the taxpayer.

The Debtors, who do not deny the material facts and albeit do not expressly concede the absence of any genuine issues of material fact basically dispute that: (1) they are required to pay income tax; (2) the IRS is an existing entity with power to make the assessment; and (3) that there is a valid easement because there is nothing in this record to show an assessment signed by an "assessment officer." The Debtors, therefore, contend that the Government never acquired any valid enforceable tax lien on the funds which were on deposit in the Bank, and that the Debtors are entitled to all the funds in the Registry.

Section 6201 of the Internal Revenue Code authorizes the Secretary of Treasury, or his delegate, to assess all taxes, including interest and additional taxes imposed by the Code. The assessment is made by "recording the liability of the taxpayer in the Office of the Secretary in accordance with the rules and regulations prescribed by the Secretary." 26 U.S.C. § 6203. While it is true that in the present instance the actual assessments are not part of this record, the Government filed a Certificate of Assessment and Payments. It is recognized that such a

certificate is presumptive proof of a valid assessment. *United States v. Chila,* 871 F.2d 1015, 1018 (11th Cir.1989), *quoting United States v. Dixon,* 672 F.Supp. 503, 505 (M.D.Ala.1987) *aff'd,* 849 F.2d 1478 (11th Cir. 1988). *See also Freck v. Internal Revenue Service,* 37 F.3d 986, 991–92 n. 8 (3d Cir. 1994) *Long v. United States,* 972 F.2d 1174, 1181 (10th Cir.1992). Moreover, the Debtors failed to challenge the IRS's determination of their tax liability before it was assessed by filing a timely petition with the U.S. Tax Court. 26 U.S.C. § 6213. Therefore, the assessment was timely made. The Debtors had a right to challenge the correctness of the notice of deficiency issued after the jeopardy assessment of their 1993, 1994, and 1995 tax liabilities by filing a timely petition in the U.S. Tax Court. 26 U.S.C. § 6961(b). While they did challenge the jeopardy assessment in the U.S. District Court, the jurisdiction of the District Court is limited to a review of the reasonableness of the assessment. Because they did not file a petition in the Tax Court within ninety days of the receipt of the notice of deficiency, the deficiency became assessable, 26 U.S.C. § 6213(c), regardless of the jeopardy assessment procedure. *Humphreys v. United States,* 62 F.3d 667 (5th Cir.1995). Lastly, while the Government may be named as a party in an interpleader action, the taxpayer cannot challenge the underlying tax assessment. *Stoecklin v. United States,* 943 F.2d 42, 43 (11th Cir.1991); *Robinson v. U.S.,* 920 F.2d 1157, 1161 (3d Cir.1990); *Schmidt v. King,* 913 F.2d 837, 839 (10th Cir.1990). The only litigation which may be brought under 28 U.S.C. § 2410 is to challenge the procedural validity of the federal tax lien and the taxpayer may not attack the merits of the underlying assessment.

Based on the foregoing, this Court is satisfied that there is no dispute that the assessment has been made; that the Debtors failed and refused to pay the taxes assessed; and that as a result a tax lien arose against all properties of the Debtors, including the funds which were on deposit in the Bank. There being no genuine issues of the material fact, the Government is entitled to an Order granting its Motion for Summary Judgment vis-a-vis the Debtors, and based on the stipulation by the Trustee, its tax lien is superior to the claim of the Trustee, but only to the extent and consistent with the stipulation.

## MOTION FOR SUMMARY JUDGMENT BY THE TRUSTEE

The facts relevant to the Trustee's Motion are equally without dispute. The validity of the Judgment obtained by the Trustee in the State Circuit Court is not in dispute and neither is the fact that the Trustee obtained a Writ of Execution which was served on the Clerk of the Bankruptcy Court. The only question remaining is whether the garnishment lien did attach to the funds while the funds were in *custodia legis.*

In light of the fact that the Chapter 7 case has been dismissed, and although ordinarily any property remaining would be returned to the Debtor, the estate as such has no further interest in the property. However, because it is understood that this Court retained jurisdiction over the adversary proceedings in which competing claims to the funds deposited in the Court's Registry have been asserted by all parties in interest, this Court is satisfied that it is appropriate to consider the validity of the garnishment lien asserted by the Trustee. Based on the foregoing, undisputed record this Court is satisfied that the Trustee acquired a garnishment lien on the funds in the Registry, albeit junior to the tax lien of the Government. Since there are no genuine issues of material fact, the Trustee's Motion for Summary Judgment should be granted.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Motion for Summary Judgment filed by the Government be, and the same is hereby, granted.

It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgement filed by the Trustee be, and the same is hereby, granted.

It is further

ORDERED, ADJUDGED AND DE-CREED that the Motion for Summary Judgment filed by the Debtors be, and the same is hereby, denied.

A separate final judgment will be entered in accordance with the foregoing.